IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REVZIP, LLC AND POWER HOUSE SUBS CORPORATE, LLC,<br><br>           Plaintiffs,<br><br>      v.<br><br>MICHAEL MCDONNELL d/b/a SUBPREME FUNDRAISNG AND CATERING, CHRISTOPHER MCDONNELL, JACOB BEARER, DANA BEARER, SUPREME FUNDRAISING AND CATERING, LLC, POWER HOUSE ENTERPRISES, LLC, POWER HOUSE II, LLC, POWER HOUSE CATERING, LLC, AND GEORGIE'S SELF-SERVE FOOD, INC.,<br><br>           Defendants. | Case No. 3:19-cv-191<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

### I.    Introduction

This case arises from Defendant Michael McDonnell's ("Mike")[1] ownership and sale of his sub sandwich shop and fundraising business, Power House Subs,[2] to Revzip.

Pending before the Court is Plaintiffs Rezvip, LLC, and Power House Subs Corporate (collectively, "Revzip" or "Power House"), LLC's Motion for Preliminary Injunction and

---

[1] As multiple Defendants in this action have the same last names, the Court will refer to them by their first names for purposes of clarity.

[2] When referring to "Power House Subs," the Court is referring to the physical store and fundraising business, rather than any particular business entity associated with or owning the store. "Power House" refers to Plaintiff Power House Subs Corporate, LLC.

Temporary Restraining Order[3] (ECF No. 3) against defendants Mike ("Mike"), Chris McDonnell ("Chris"), Jacob Bearer ("Jake"), Dana Bearer ("Dana"), and Supreme Fundraising and Catering, LLC ("Supreme Fundraising") (collectively, "Defendants"). Plaintiffs, having received a temporary restraining order, seek a preliminary injunction to protect various trade secrets and enforce non-compete agreements related to the operation of their sandwich shop and catering business. For the reasons that follow, the Court **DENIES** Revzip's Motion for Preliminary Injunction.

## II.    Jurisdiction and Venue

This Court has jurisdiction over the action because Count Five arises under federal law, and the remaining state law claims in the action form part of the same case or controversy. 28 U.S.C. §§ 1331, 1367. Venue is proper in this district because Power House Subs' place of business is Blair County, which is part of the Western District of Pennsylvania and a substantial portion of the events giving rise to the action occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391.

## III.    Factual Background[4]

Mike originally owned and operated the business known as Power House Subs, which operates two sub sandwich stores in the area of Altoona, Pennsylvania, and also operates a

---

[3] On November 14, 2019, the Court granted Plaintiffs' Motion for Temporary Restraining Order, but reserved ruling on the Motion for Preliminary Injunction until it could hold a hearing on the issues. (*See* ECF No. 12.) The Court held the hearing on November 26 and 27, 2019. Accordingly, this Order only addresses the Motion for a Preliminary Injunction.

[4] The Court draws facts from the Complaint (ECF No. 1), Declarations attached to Plaintiffs' brief in their Motion for Preliminary Injunction and Temporary Restraining Order (ECF Nos. 5-2, 5-3, 5-4, 5-6, 5-9, 5-10, 5-11), a declaration attached to Defendants' Response (ECF No. 20-1), and testimony and evidence presented at the hearing on the preliminary injunction on November 26 and 27, 2019. There are two transcripts from the hearing on the preliminary injunction hearing. The Court will cite to the first, taken

catering and fundraising business in the same area. (ECF No. 1 ¶ 18.) Mike's brother, Chris, and his nephew, Jake, worked at various times for Power House Subs. (*Id.* ¶¶ 43, 90–91.) Dana, Jake's mother and Mike's sister, had some minor involvement in Power House's, or a previous iteration's, operations. (Tr. 1 at 9:3–10:13.) Mike sold Power House Subs and all of its intellectual property ("IP") to Power House Corporate, LLC on November 12, 2018,[5] while retaining a fifteen percent share for himself. (*Id.* ¶¶ 26–30.) The IP included in the agreement includes any "trade dress, trade secrets, domain names, and other intellectual property" associated with Power House Subs. (ECF No. 1-1 at 1.) Revzip believed that, in buying Power House Subs from Mike, they were acquiring the recipes to Power House Subs' two secret dressing recipes (the "Secret Recipes"), one light and one dark, used on sandwiches, as well as Power House Subs' fundraising customer list (the "Customer List"). (Tr. 2 at 135:10–136:12.) As part of this sales agreement, Mike signed a non-compete agreement preventing him from working in the sandwich shop industry in any form for two years within twenty-five miles of Power House Subs' locations, as well as a non-disclosure agreement agreeing to not disclose any confidential information or use that information in competing with Power House. (ECF No. 1 ¶¶ 31–37, 50–54.)

After the sale, Mike continued to work for Power House as an at-will employee. (*Id.* ¶ 42.) Several months after the sale, Mike became dissatisfied with his role at Power House and ultimately quit. (*Id.* ¶¶ 57–61.) After quitting, Mike stated that he was planning on opening a competing sandwich shop and registered the fictitious business name Subpreme Fundraising and

---

on November 26, 2019, as "Tr. 1." The Court will cite to the second, taken on November 27, 2019, as "Tr. 2." The Court recites only those facts necessary to understand the dispute.

[5] The chain of ownership in this case is complex, and not relevant to deciding the instant Motion. For now, all that is relevant is that Revzip and Power House Corporate are the majority owners of the sandwich shop operating under the name of Power House Subs.

-3-

Catering. (*Id.* ¶¶ 63, 82.) After being told that the non-compete barred his ability to open a new sandwich shop, Mike dropped the idea and filed a declaratory judgment action[6] in the Court of Common Pleas of Blair County. (Tr. 1 at 57:9–59:18.) During the post-sale period that Mike continued to work at Power House, Revzip allegedly made several improvements to Power House's operations, including developing a special process for taking fundraising orders and making sandwiches for fundraisers (the "Assembly Process"). (Tr. 2 at 73:3–12.)

Shortly after Mike quit Power House Subs, Jake indicated his desire to open his own sandwich shop and created Supreme Fundraising and Catering, LLC. (Tr. 1 at 143:13–17; 173:2–174:16.) Jake initially scheduled his shop to open on November 15, 2019, in Altoona. (*Id.* ¶ 126.)

## IV. Procedural Background

Revzip filed this lawsuit on November 6, 2019 and moved for both a temporary restraining order and preliminary injunction on November 7, 2019. (ECF Nos. 1, 3.) The Court held a hearing on Revzip's Motion for a Temporary Restraining Order on November 14, 2019, and granted the Motion, solely for a temporary restraining order, that same day. (ECF Nos. 12, 13.) In its Order granting the temporary restraining order, the Court found that Revzip was entitled to injunctive relief. (ECF No. 12.) The Court found that Revzip was likely to prevail on the merits, that Revzip would be irreparably harmed in the absence of the temporary restraining order, that the balance of the equities favored granting the temporary restraining order, and finally that the public interest favored granting the temporary restraining order. (*Id.* at 4–5.)

---

[6] The state declaratory judgment action, pending in the Court of Common Pleas of Blair County pending at docket number 2019-GN-2993. (ECF No. 5-12.)

Defendants filed a response on November 25, 2019. (ECF No. 20.) On November 26 and 27, 2019, the Court held a hearing on Revzip's Motion for a Preliminary Injunction, and on November 27, 2019, extended the temporary restraining order until December 6, 2019, pending resolution of the Motion for Preliminary Injunction. (ECF No. 21.) Following the hearing, the Court requested that the parties file post-hearing briefs no later than December 4, 2019. The parties timely filed the appropriate briefs. (ECF Nos. 25, 26, 27, 28.)

Revzip's Complaint includes thirteen counts: Counts One through Three are for breach of contract, relating to various contracts Mike signed while selling Power House Subs (ECF No. 1 ¶¶ 129–47.); Counts Four, Nine, and Ten are claims of tortious interference (*Id.* ¶¶148–54, 181–197); Counts Five through Seven are claims of misappropriation of trade secrets and confidential information (*Id.* ¶¶ 155– 76); Count Eight is a claim for conversion (*Id.* ¶¶ 177–80); Count Eleven claims business defamation (*Id.* ¶¶ 198–204); Count Twelve is for breach of fiduciary duty (*Id.* ¶¶ 205–14); and Count Thirteen seeks relief for a civil conspiracy (*Id.* ¶¶ 215–18).

Revzip's Complaint seeks injunctive relief only on Counts One through Eight and Thirteen. (*Id.* ¶¶ 136, 143, 147, 154, 163, 171, 176, 180, 218.) However, their Motion for Preliminary Injunction and Brief in Support, as well as their post-hearing brief, only address Counts One through Seven. (ECF Nos. 3, 5, 26.) Accordingly, the Court will only address Counts One through Seven in determining whether to grant the preliminary injunction.

## V. Legal Standard

The Federal Rules of Civil Procedure permit courts to issue preliminary injunctions on notice to the adverse party. Fed. R. Civ. P. 65(a). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)

(citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is appropriate only "upon a clear showing that the [movant] is entitled to such relief." *Id.* at 22 (citation omitted). In determining whether a party is entitled to a preliminary injunction, courts consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed without the preliminary injunction; (3) the balance of equities favors granting a preliminary injunction, including any harm to the nonmoving party; and (4) whether granting the preliminary injunction will be in the public interest. *Id.* at 20; *Columbia Gas Transmission, LLC v. Temporary Easements for Abandonment of a Nat. Gas Pipeline Across Somerset & Fayette Ctys., Pa.*, No. 3:16-cv-268, 2017 WL 1284943, at *3 (W.D. Pa. Apr. 5, 2017) (Gibson, J.).

"While these factors structure the inquiry, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a 'delicate balancing' of all elements." *Constructors Ass'n of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

## VI. Discussion

### A. Findings of Fact

The Court makes the following findings of fact:

1. Mike knows the Secret Recipe for the light dressing. (ECF No. 20-1 ¶ 47.)

2. Mike is the only party that Power House has ever subjected to a nondisclosure agreement regarding any of the alleged trade secrets; no other Power House employee, including those who know how to make the Secret Recipes, have agreed to keep the Secret Recipes confidential. (*See, e.g.*, Tr.2 at 28:14–29:11, 90:12–91:19, 95:1–9, 97:21–23, 177:3–6.)

3. Jake and Chris worked at Power House both before and after Mike sold Power House Subs to Revzip and were familiar with its processes and fundraising activities. (Tr. 1 at 171:16–18, 167:15–20; Tr. 2 at 37:9–15, 40:22–41–1.)

4. At some point after Mike quit Power House in August of 2019, a recipe for one of the Secret Recipes were posted on the wall of a room in the restaurant for a period of somewhere between six weeks and three months. (Tr. 2 at 40:23–41:6, 176:17–23, 29:23–30:7.)

5. The posted recipe was visible to any of Power House's employees or vendors who had access to the room. (Tr. 2 at 30:8–23.)

6. The Customer List consists of contact information for various parties who have used Power House's sandwiches for fundraising purposes in the past; these groups include youth sports teams, church groups, and other similar organizations. (ECF No. 20-1 ¶ 10; Tr. 2 at 171:21–72:18.)

7. The information on the Customer List is publicly accessible via internet search, phone directories, and similar compilations, but not all available in one location. (Tr. 2 at 60:15–21, 172:15–18.)

8. Personal contacts are the foundation of most sales involving sandwich fundraising. (Tr. 1 at 24:2–4, 46:18–19, 206:9–13; Tr. 2 at 129:3–23.)

9. There is nothing unique or different about the Assembly Process compared to other sandwich shops; at least one other sandwich shop and fundraising business in the Altoona area uses the same process. (Tr. 2 at 39:8–40:11.)

10. The Assembly Process can essentially be duplicated by looking at a sandwich made by Power House, and generally involves the following steps: slicing a roll; placing meat on the roll, followed by condiments and vegetables; and wrapping the sandwich. (ECF No. 20-1 ¶¶ 11–13; Tr. 2 at 39:8–40:11.)

11. Mike gave an Uber ride to one of Power House's employees, Trisha Gregorchik, discussed Power House Subs with her, and offered her a job, but that job offer was only for "down the road." (Tr. 1 at 155:6–9.)

## B. Revzip Has Not Established a Likelihood of Success on the Merits of the Case

Although this Court's Order of November 14, 2019, granted Revzip a temporary restraining order, following the hearing on the preliminary injunction, the Court no longer believes that injunctive relief is appropriate. (*See* ECF No. 12.) The Court will address the preliminary injunction factors in order, beginning with likelihood of success on the merits, then proceeding to irreparable harm, the balance of the equities, and the public interest, respectively. After its analysis of all four factors, the Court concludes that Revzip has failed to show that it is entitled to a preliminary injunction. With respect to the likelihood of success on the merits, the Court will address Revzip's claims in turn.[7]

### 1. Revzip Has Failed to Establish a Likelihood of Success on the Merits of Its Breach of Contract Claims

To show a likelihood of success on the merits of its breach of contract claims, Revzip must establish each of the following elements: (1) existence of a contract; (2) that the defendant breached a duty, here, not to compete or disclose confidential information, imposed by that

---

[7] The Court will address the claims as grouped above (i.e., the Court will address all the breach of contract claims together, the trade secrets claims together, and so on).

contract; and (3) damages caused by the breach. *See Meyer, Darragh, Bucklet, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 137 A.3d 1247, 1258 (Pa. 2016). Here, the parties do not dispute the existence of a contract between Mike and Revzip,[8] nor do they dispute damages at this time. Accordingly, the Court will focus solely on whether Revzip established a the second element: breach of the non-compete and non-disclosure agreements.

Revzip alleges that Mike's efforts to compete did not terminate upon receipt of the cease and desist letter, but rather continued through November of 2019, and argues that the fact that Jake created Supreme Fundraising a few days after Mike received the cease and desist supports this contention. Revzip also maintains that testimony shows that Mike contacted and solicited Revzip's employees "at least as far as late October." (ECF No. 26 at 26.) Finally, Revzip contends that Bradley Becher's testimony that Mike had come up with the name for Supreme Fundraising and other statements contradicts testimony showing that Mike did not intend to compete. (*Id.*)

Defendants respond that Mike's testimony shows that he believed he was permitted to compete with Power House based on a conversation with Brice Mertiff, the majority owner of Power House. (ECF No. 25 at 22.) Defendants also assert that, since receiving the cease and desist from Power House, Mike has ceased all competition efforts, and that several witnesses testified that Mike has not sold or made a sub, hired any employees, or competed in any other way with Power house since receiving the cease and desist. (*Id.*)

While Mike did give an Uber ride to one of Power House's employees, Trisha Gregorchik, discuss Power House Subs with her, and offer her a job, that job offer was only for "down the

---

[8] Defendants do dispute the existence of a contract between Revzip and any other Defendant. Revzip produced no evidence of any such contract, and the Court accordingly holds that Revzip has no likelihood of success on the merits of a breach of contract claim against the other Defendants.

road." (Tr. 1 at 155:6–9.) "Down the road," after his non-compete agreement expires,[9] Mike is free to open a new sandwich shop and hire Ms. Gregorchik. Ms. Gregorchik has had no contact with Mike since that time. (Tr. 1 at 158:23–25.)

Revzip has failed to establish a likelihood of success on the merits of its breach of contract claims.[10] Revzip asserts that Mike's testimony that he intended to compete prior to receiving a cease and desist letter and then stopped upon its receipt is not credible, and argues that Mike continued to attempt to compete following receipt of the cease and desist letter. (ECF No. 26 at 26.) Mike conceded that he had initially planned to compete, but he testified that once he received the cease and desist letter and filed the state declaratory judgment action, he intended to await resolution of that issue before continuing to compete. (Tr. 1 at 57:9–59:18.) Revzip failed to introduce sufficient evidence to contradict this testimony. Revzip introduced testimony that one of Power House's customers, the YMCA, never ordered sandwiches from them after Mike departed, but this is not enough to contradict Mike's testimony. (Tr. 2 at 147:5–7.)

### 2. Revzip Has Failed to Establish a Likelihood of Success on the Merits of Its Tortious Interference with Existing Contractual Relations Claim

To show a likelihood of success on the merits of its tortious interference claim, Revzip must produce evidence of the following elements: (1) a contract between the plaintiff and a third party; (2) action the defendant takes with the purpose of harming that contractual relation; (3) absence of privilege to interfere; and (4) harm as a result of that purposeful action. *Charbonneau v. Chartis Property Cas. Co.*, No. 13-cv-4323, 2014 WL 1259567, at *7 (E.D. Pa. Mar. 26, 2014)

---

[9] Assuming that the agreement is indeed valid. The Court expresses no view on the ultimate merits of that claim here.

[10] Mike is the only defendant who has signed a contract with Revzip. Accordingly, the Court need not consider the actions of the other Defendants in addressing these claims.

(applying Pennsylvania law). The parties do not dispute the existence of a contract between Mike and Revzip, nor have Defendants argued that they were privileged to interfere, or that no harm occurred. Therefore, the Court will only address the second element: action taken for the purpose of interfering with Mike's contract with Revzip. The Court will first address Revzip's contentions against Chris and Jake, then against Dana.

Revzip's Complaint alleges that Chris, Dana, Jake, and their associated business entities "took purposeful actions" to harm Revzip's relationship with Mike and convince him that they would assist him in circumventing his contractual agreements with Revzip. (ECF No. 1 ¶ 150.) While the testimony presented at the preliminary injunction hearing may permit that inference, there was no evidence that directly showed that Chris and Mike were acting to interfere with Mike and Revzip's contractual relations. In fact, the evidence produced on that issue contradicts the inference that Revzip requests the Court draw.

Jake testified that he was seeking to open his own sandwich business, independent of Mike, and that Chris was helping him. (*See e.g.*, Tr. 1 at 184:22–185:7.) Chris testified that he was not attempting to interfere with Power House's contractual relationships with Mike; he was boosting Jake's new venture by contacting vendors and helping Jake set up business relationships. (*E.g.*, Tr. 2 at 51:1–3.) Revzip failed to produce sufficient evidence to establish a likelihood that Mike was assisting Jake and Chris with establishing Supreme Fundraising, or that Jake and Chris were assisting Mike in breaching his contractual agreements with Revzip, as required for a claim of tortious interference.

Dana's only involvement in this case comes from her Facebook post promoting Jake's business. Dana testified that, by posting on Facebook, she was simply promoting Jake's business.

-11-

(Tr. 33:8–15.) Revzip failed to show that Dana took that action for the purpose of interfering with Revzip's contractual relations with Mike.

Revzip did not clearly establish a likelihood of success on the merits of its claim for tortious interference.

### 3. Revzip Has Failed to Establish a Likelihood of Success on the Merits of Its Trade Secrets and Misappropriation Claims[11]

Federal law defines a "trade secret" as a form or type of "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if the owner of the trade secret "has taken reasonable measures to keep such information secret" and the information has "independent economic value" from being "not generally known to, and not being readily ascertainable though proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). "Misappropriation" is acquiring or disclosing the trade secret by improper means. 18 U.S.C. § 1839(5).

Essentially, a trade secret is a piece of information that: (1) the owner has taken "reasonable" steps to keep secret; (2) derives independent economic value by virtue of its secrecy; (3) cannot be readily ascertained by proper means; and (4) those who cannot access would obtain

---

[11] The Court asked the parties to address the issue of its jurisdiction in their post-hearing briefs because a determination that the claimed trade secrets are not actually trade secrets might necessarily strip this Court of its jurisdiction. As the Court is not resolving a dispositive motion here, it expresses no view on whether dismissal for lack of jurisdiction on that basis would be proper. Additionally, a motion to dismiss for lack of jurisdiction is generally not an attack on the merits. *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 898 (3d Cir. 1987). The Court expresses no view on whether the factual allegations in Plaintiffs' Complaint are sufficient to state a claim under federal law.

economic value from knowledge or use of it.[12] *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434 (E.D. Pa. 2018).

One "reasonable" step a trade secret owner can take is to explicitly mark information pertaining to the trade secret as "confidential." *See Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 167–68 (E.D. Pa. 2017). Another such step is to require employees to sign confidentiality or non-disclosure agreements. *See id.* at 171. Furthermore, once the owner of the trade secret "discloses [it] to others who are under no obligation to protect [its] confidentiality," the trade secret is a trade secret no longer. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also Sheets v. Yamaha Motors Corp.*, 849 F.22d 179, 183–84 (5th Cir. 1988).

The evidence provided at the hearing failed to clearly establish that Revzip took reasonable steps to keep the Secret Recipes secret. Revzip did not require its employees who knew the Secret Recipes, other than Mike, to sign confidentiality or non-disclosure agreements. (*See, e.g.*, Tr.2 at 28:14–29:11, 90:12–91:19, 95:1–9, 97:21–23, 177:3–6.) There was nothing stopping any employee familiar with the Secret Recipes from either leaving for a rival sandwich shop and bringing the Secret Recipes with them, or from starting their own sandwich shop and using the Secret Recipes as part of their business. Further, Revzip posted the Secret Recipes in the sandwich preparation room in the store, visible to all employees, even those who were not familiar with the recipe, and accessible to any vendor who had access to that area. (Tr. 2 at 29:23–30:23.)

---

[12] Due to the similarities between the definition of the term "trade secret" in the DTSA and in the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), the Court considers interpretations of the PUTSA to be persuasive. *Compare* 18 U.S.C. § 1839(3), *with* 12 Pa. C.S. A. § 5302. Further, Revzip's Complaint includes a claim for violation of the PUTSA. (*See* ECF No. 1 ¶¶ 164–171.)

Because Revzip produced no evidence showing that it took "reasonable" steps to protect the confidentiality of the Secret Recipes, and it displayed the Secret Recipes to "others who are under no obligation to protect [their] confidentiality," Revzip failed to establish a likelihood of success on the merits of its trade secrets and misappropriation claims regarding the Secret Recipes. *See Ruckelshaus*, 467 U.S. at 1002.

Revzip has also failed to establish a likelihood of success on its claim of misappropriation of the Assembly Process. Plaintiffs produced no evidence at the hearing that the Assembly Process was in any way unique or different from processes other sandwich shops use to make sandwiches. The general public is familiar with the usual process of making a sandwich—most people having made at least one sandwich in their lives: take open-faced bread; place the desired meat, cheese, toppings, and condiments in between the pieces of bread; close the sandwich; and package it if necessary. *See Sweet St. Desserts, Inc. v. Better Bakery, LLC*, No. 12-cv-6115, 2015 WL 4486702, at *2, *8–10 (E.D. Pa. July 23, 2015) (holding that pretzel sandwich creation methods were not trade secrets).

Revzip failed to produce sufficient evidence to show that the Assembly Process was in any way unique, unknown to the general public, or unascertainable unless by improper means. *See* 18 U.S.C. § 1839(3). Further, Mike's testimony and declaration provide evidence contrary to Revzip's assertion. Mike stated, both in his declaration and in testimony that the Assembly Process was not unique, confidential, or proprietary. (ECF No. 20-1 ¶¶ 11–13; Tr. 2 at 39:8–40:11.) Revzip also failed to produce any evidence showing that they subjected their employees to confidentiality agreements regarding any aspect of the Assembly Process. Accordingly, Revzip

has failed to establish a likelihood of success on the merits of its trade secrets claim regarding the Assembly Process.

Finally, Revzip has also failed to establish a likelihood of success regarding its claim that the Customer List is a trade secret. While customer lists can be trade secrets, they are generally considered to be on the "periphery" of protection. *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 13 F. Supp. 3d 465, 474 (E.D. Pa. 2014) (applying the Pennsylvania law).[13] In addition, trade secret law separates information available from the holder of the alleged trade secret and information available through other sources. *See Brett Senior & Assocs, P.C. v. Fitzgerald*, No. 06-cv-1412, 2007 WL 2043377, at *6–7 (E.D. Pa. July 13, 2007) (applying Pennsylvania law). When a customer list is available though public lists or sources, it is not protected unless it represents a "material investment" of the customer list's owner. *Ozburn-Hessey Logistics*, 13 F. Supp. 3d at 474. In addition, the personal business contacts of an employee are not trade secrets. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1258 (3d Cir. 1985).

Defendants produced evidence at the hearing that Power House's fundraising customers were organizations whose contact information is publicly available. (Tr. 2 at 60:15–21, 171:21–72:18, 172:15–18.) These customers are organizations like youth sports teams, school clubs, church youth groups, and the like. (*Id.*) Revzip did not present sufficient evidence to establish its likelihood of success on this issue. Revzip did not show that its customer list involved a "material investment" of its time and resources to create the customer list and Revzip did not require any employees to sign a confidentiality agreement in regards to the customer list. Finally, Mike and

---

[13] As noted above, the Court considers Pennsylvania law persuasive due to the similarities between the PUTSA's definitions and the DTSA's. The existence of the PUTSA claim is another factor in the Court's citations to cases applying the PUTSA.

Jake both worked at Power House for substantial periods of time during which they had customer contact, and Revzip failed to show that any of their potential customers were obtained through use of the Customer List. Accordingly, because Revzip failed to take "reasonable" steps to maintain the confidentiality of the Customer List, and because it is "readily ascertainable" through proper means, the Customer List is not a trade secret. *See* 18 U.S.C. § 1839(3).

Because the PUTSA and the DTSA are highly similar, the Court holds that Revzip has likewise failed to establish a likelihood of success on its claim under the PUTSA. Additionally, Revzip has failed to establish a likelihood of success on the merits of Count Seven, its misappropriation of confidential information claim, for the reasons discussed above.

## C. Revzip Has Established Irreparable Harm on Its Trade Secrets Claims, but Not on Its Breach of Contract or Tortious Interference Claims

Revzip has established that it will suffer irreparable harm in the absence of an injunction, but only with respect to some of its claims for injunctive relief—not all.

A plaintiff seeking a preliminary injunction must prove that, in the absence of relief, irreparable harm is "likely." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121,142 (3d Cir. 2017). Breach of contract, tortious interference, and trade secrets claims are all claims where a court may issue injunctive relief. *See Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.*, 138 F. App'x. 431, 434 (3d Cir. 2005) (unpublished) (tortious interference); *Campbell Soup Co. v. ConAgra, Inc.* 977 F.2d 86, 92–93 (3d Cir. 1992) (trade secrets); *York Grp, Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1243 (Pa. Super. Ct. 2007) (breach of contract).

The use or disclosure of a trade secret almost always constitutes irreparable harm for purposes of issuing an injunction. *See Campbell Soup Co.*, 977 F.2d at 92–93. Revzip's allegations

that Defendants will use or disclose its trade secrets, assuming that Revzip can establish that the alleged trade secrets are indeed trade secrets, are sufficient to establish likely irreparable harm on Revzip's trade secrets claims. Revzip has also established likely irreparable harm for Mike's alleged breach of the nondisclosure agreement because such disclosure would be of Revzip's alleged trade secrets.

However, Revzip has failed to establish that it will likely suffer irreparable harm on its tortious interference claims, or its breach of contract claims relating to Mike's non-compete agreement or to any of the other Defendants. Revzip only produced evidence that one customer, a local YMCA, had stopped ordering from Power House since Mike quit, but could not establish where the YMCA had taken its business, or that Power House was losing any other customers as a result of Defendants' actions. (*See* Tr. 2 at 146:20–47:7.)

As previously noted, Mike was the only party who signed a contract with Revzip, and accordingly, the other Defendants could not breach a contract and likely cause irreparable harm to Revzip.

Revzip failed to establish that it would suffer irreparable harm in the absence of an injunction barring Mike from further competition. Mike testified that once he received the cease and desist letter, and filed the state declaratory judgment action, he intended to await resolution of the issue in state court before continuing to open a new sandwich shop. (Tr. 1 at 57:9–59:18.)

-17-

Revzip did not produce testimony to contradict this assertion, and therefore failed to establish likely irreparable harm on its breach of contract claim.

## D. Revzip Has Not Established That the Balance of the Equities Favors Granting a Preliminary Injunction

The Court holds that Revzip has failed to clearly establish that the balance of the equities favors granting an injunction. In balancing the equities, the Court must consider the potential injury that plaintiff will suffer in the absence of the injunction and the potential injury of the defendant in the presence of the injunction. *Issa*, 847 F.3d at 143.

Revzip will, allegedly, suffer the disclosure of its trade secrets and the loss of business in the absence of this Court's issuance of an injunction. In contrast, Mike will suffer no harm in the presence of an injunction other than that to which he has already agreed in signing the various contract involved in his sale of Power House to Revzip. However, if this Court issues an injunction that also restrains Chris, Jake, and Dana, they will be unable to freely compete in the sandwich business against Revzip and Power House, and they have signed no such contracts restraining that right.

Revzip did not establish that any defendant, other than Mike, was subject to any form of confidentiality or non-compete agreement, or that any defendant, other than Mike, knew of, let alone misappropriated, any trade secret. As for Mike, Revzip failed to establish that he was competing with Power House in any manner at any time following the cease and desist letter Power House sent to Mike. Mike testified that he was waiting for the outcome of the state declaratory judgment action before continuing to compete, and this testimony remains insufficiently rebutted. (Tr. 1 at 57:9–59:18.) In the absence of any showing that any party subject

-18-

to an agreement not to compete is in fact competing, and in the absence of any non-compete agreement for those parties actually intending to compete, the balance of the equities here favors allowing competition because there is no evidence that restraining any of Defendants will limit any potential harm to Revzip. Accordingly, Revzip has failed to clearly establish the third factor required for this Court to issue a preliminary injunction.

### E. Revzip Has Not Clearly Established That the Public Interest Favors Granting a Preliminary Injunction

The final factor that the Court must consider is whether the public interest favors an injunction. *Issa*, 847 F.3d at 143. This is the case because if the plaintiff shows both a likelihood of success on the merits and irreparable injury, the public interest almost always favors granting the preliminary injunction. *Id.* (citing *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).

Here, as Revzip has not established a likelihood of success on the merits, and has only established irreparable harm on its three trade secrets claims and breach of contract claim against Mike, the public interest does not favor granting an injunction here. Although the public has an important interest in the protection of trade secrets, and the enforcement of contracts, the public also has an equally important interest in free competition and limits on the ability to restrain trade. Revzip has failed to establish that the public interest favors an injunction in this case.

### VII. Conclusion

For the forgoing reasons, the Court holds that Revzip has failed to establish a likelihood of success on the merits, that the balance of the equities favors granting injunctive relief, or that the public interest favors an injunction. While Revzip has established irreparable harm with

-19-

respect to some of its claims, it has not established it for all. Accordingly, after weighing the factors, the Court holds that Revzip is not entitled to a preliminary injunction and therefore denies the Motion.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVZIP, LLC AND POWER HOUSE SUBS CORPORATE, LLC, | ) ) ) | Case No. 3:19-cv-191 |
| Plaintiffs, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| MICHAEL MCDONNELL d/b/a SUBPREME FUNDRAISNG AND CATERING, CHRISTOPHER MCDONNELL, JACOB BEARER, DANA BEARER, SUPREME FUNDRAISING AND CATERING, LLC, POWER HOUSE ENTERPRISES, LLC, POWER HOUSE II, LLC, POWER HOUSE CATERING, LLC, AND GEORGIE'S SELF-SERVE FOOD, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 9th day of December, 2019, after hearing and consideration of Plaintiffs'

Complaint (ECF No. 1) and Motion for Preliminary Injunction and Temporary Restraining Order

(ECF No. 3) under Federal Rule of Civil Procedure 65, **IT IS HEREBY ORDERED** that the Motion

for a Preliminary Injunction is **DENIED**. The Temporary Restraining Order entered on

November 14, 2019, and extended on November 27, 2019 (ECF Nos. 12, 21) is **HEREBY**

**DISSOLVED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

-21-